Mrs. Helen DiVincenti, a passenger in an omnibus owned and operated by the New Orleans Public Service, Inc., was injured when the bus collided with a Chevrolet automobile at the intersection of Governor Nicholls and Galvez Streets on February 10th, 1942. She brought this suit against the Public Service claiming $15,000, for physical injuries and her husband, as head and master of the community, joined in the suit asking for $433.98 for hospitalization and medical expenses. The charges of negligence alleged in plaintiffs' petition were excessive speed, lack of skill on the part of the bus driver and failure to exercise proper precautions under the conditions prevailing (the streets were wet due to a recent rain).
The defendant denied all responsibility for the accident which, it contended, was entirely due to the negligence of the driver of the Chevrolet automobile in driving out Governor Nicholls Street and into the intersection of Galvez Street striking the defendant's bus in an evident attempt to beat "the bus across the intersection although the bus had clearly preempted the intersection and should have been allowed to cross same".
The case was tried by a jury and resulted in a verdict in defendant's favor dismissing plaintiffs' suit. From a judgment based on this verdict the plaintiffs have appealed.
The sole issue, one of fact, is whether the driver of the defendant's bus was guilty of any negligence which contributed to the accident.
As has been stated, the pavement of Galvez Street, on which the bus was proceeding in the direction of Canal Street, was wet. After contact with the Chevrolet the bus skidded and came to rest on the sidewalk on the left or riverside of Galvez Street causing one of the tires to blow out. It is the contention of the plaintiffs that this skidding by the bus began before contact with the Chevrolet automobile and was the cause of the accident, whereas the defendant contends that the contrary was the case and that the skidding was caused by the blow struck the bus by the automobile.
Governor Nicholls Street is not paved and the bus was approaching from the right of the Chevrolet. The bus had the right of way under several provisions of the traffic ordinance No. 13,702 C.C.S.
The driver of the Chevrolet did not testify in person or by deposition.
According to the bus driver, Joseph Chatelain, who had been in the employ of the defendant for some sixteen years, he approached the intersection of Governor Nicholls Street at a speed of between twelve and eighteen miles per hour and when about twenty-five feet from the corner where the collision occurred, he looked out Governor Nicholls Street without seeing anything approaching; that as he entered the intersection he saw the Chevrolet coming very rapidly and that he continued on across, believing that if he stopped a collision would be certain to occur, whereas otherwise the automobile might pass to the rear of the bus; that at the moment of the impact the front of his bus had cleared the intersection and that the contact occurred near its rear end.
David Gardner, a passenger in the bus, testified that he saw the Chevrolet car when about fifteen feet distant from the bus, when the front end of the bus was "a least bit beyond the intersection", and that the automobile hit the bus "good and hard". In speaking of the speed of the automobile Gardner said "he did not stop or nothing. This guy just come through the street so fast just anything that was in the way of Galvez he would hit".
Milton Helmer, also a passenger in the bus, testified that he saw the Chevrolet when it was about thirty feet from Galvez Street moving very rapidly and that, without stopping, it continued on until it struck the rear end of the bus creating "a very severe jar". He also testified that the bus did not skid before the accident and that its speed was normal.
Mrs. Henry J. Tiedeman testified for plaintiff. She also was a passenger in the bus. She said that the bus was going "pretty fast", but she did not know at what speed. She did not see the automobile before the collision but "heard a terrible *Page 359 
noise like something hit the bus or the bus hit something."
Mrs. DiVincenti testified that she felt a jar as the bus entered the intersection as though the brakes were being applied and that the bus skidded to the riverside of the street and rammed the Chevrolet car.
Jeremiah Scanlan, who lived in the vicinity of the accident, did not see the collision but heard the crash and saw the position of the colliding vehicles after the accident. This witness and one or two others were used chiefly to describe the position of the Chevrolet which, they say, had not entered the Galvez Street intersection but remained in Governor Nicholls Street. However, in view of the positive testimony of the other witnesses concerning the Chevrolet, we believe this testimony to be unreliable to the extent, at least, that it tends to prove that the Chevrolet was standing still when sideswiped by the defendant's bus, which is the main contention of the plaintiffs.
We find no fault with the manner in which the bus was driven or with its driver. He cautiously approached the intersection, looked in the direction of traffic and had pre-empted the intersection when struck in the rear by the fast moving Chevrolet.
Viewing the evidence as a whole, we cannot say that the Jury was mistaken in their verdict and the judgment based on that verdict manifestly erroneous, consequently, and for the reasons assigned, the judgment appealed from is affirmed.
Affirmed.